NORTON (HEWETT v.). See Case No. 6,-441.

NORTON v. The ISLAND CITY. See Case No. 10.306.

NORTON (McCAN v.). See Case No. 8,677.

---

## Case No. 10,351.

NORTON v. MEADER et al.

[4 Sawy. 603.] [1]

Circuit Court. N. D. California. Oct. 4, 1866. [2]

WHEN HOLDER OF LEGAL TITLE WILL BE CHARGED AS TRUSTEE—SCOPE OF CALIFORNIA STATUTE OF LIMITATIONS—PLEADING—OBJECT AND PURPOSE OF UNITED STATES LAND COMMISSION—PROTECTION AFFORDED PURCHASERS IN GOOD FAITH FOR VALUE AND WITHOUT NOTICE—SERVICE OF PROCESS—OMISSION OF SHERIFF'S RETURN—MARRIED WOMAN CANNOT CONTRACT PERSONAL OBLIGATION—MARRIED WOMAN'S ACKNOWLEDGMENT OF DEED—ACQUAINTANCE OF CONTENTS THROUGH INTERPRETER—EXCEPTION IN DEED OF LAND DESCRIBED IN ANOTHER DEED—PURCHASE OF LAND—NOTICE OF ADVERSE CLAIM.

1. Wherever property is acquired by fraud, or under such circumstances as to render it inequitable for the holder of the legal title to retain it, a court of chancery will convert him into a trustee of the true owner.

2. The statute of limitations of California applies as well to equitable as to legal remedies, being directed to the subject-matter and not the form of the proceeding, or the form in which it is presented. It would seem therefore that, where the objection is not raised by demurrer, parties claiming its bar should plead it, or insist upon it in their answer in equity suits as in actions at law.

3. The object of the government in creating the board of land commissioners, was to separate the public lands from those which constituted private property, and discharge its treaty obligations to protect private claims; the only question, therefore, in which it is concerned is, what had the former sovereignty parted with; not what had transpired between private parties subsequent to the action of that sovereignty.

4. Whilst equity will reach the holder of the legal title of lands, who has obtained it by fraud, and also parties acquiring it under him without consideration, or with notice of the rights of the

real owner, it will extend its protection to purchasers in good faith for valuable consideration without such notice.

5. Where a sheriff made two certificates of service of a copy of summons and certified copy of complaint, according to one of which he served "a true ―― of this writ attached to a certified copy of complaint," and according to the other he served "a true ―― of the complaint attached to a true copy of the summons:" Held, that the certificate of service was good; and that the omission in one certificate was cured by the statement in the other.

6. If a person declines to receive from an officer a paper presented for service, the officer may deposit it in any convenient place in the presence of the party, and the service will be good.

[Cited in Borden v. Borden, 63 Wis. 377, 23 N. W. 574.]

7. The recitals in a judgment or decree by a competent court that the defendants had been legally summoned are prima facie evidence thereof.

8. A married woman in California is incapable of contracting a personal obligation, except in certain special cases provided by statute; her uniting in the execution of such obligation with her husband will not render it any more than his individual obligation.

[Cited in Manning v. Hayden, Case No. 9,043; U. S. Trust Co. v. Sedgwick, 97 U. S. 309.]

9. A court cannot render a personal judgment against a married woman on a contract purporting to be her personal obligation. Such a judgment may be attacked collaterally, although the court may in other respects have had jurisdiction over her person and the subject-matter of the suit.

[Cited in Galpin v. Page, Case No. 5,206; U. S. Trust Co. v. Sedgwick, 97 U. S. 309; Canal Bank v. Partee, 99 U. S. 331.]

[Doubted in McCurdy v. Baughman, 43 Ohio St. 83.]

10. Where a certificate of acknowledgment to a deed by a married woman stated that she was made acquainted with the contents of the conveyance through a sworn interpreter: Held, that it was not necessary to show that the contents were made known to her by the officer himself, such information being imparted by the interpreter in the officer's presence and by his direction.

11. Where a deed of a tract of land excepted from its operation a parcel conveyed by another deed, the exception is not void for uncertainty, if the parcel in the deed mentioned is described with definite boundaries.

12. Though a person pays full value for land, and after inquiry supposes he is getting a good title, yet if he is aware of an adverse claim, which afterward proves to be valid, he cannot protect himself on the plea of having been a bona fide purchaser.

This is a suit on the equity side of the court to charge the defendants [Moses A. Meader and others] as trustees of certain real property, situated in the county of Santa Cruz, and to compel a transfer of the legal title held by them to the complainant [Charles E. Norton]. It was heard on the pleadings and proofs in September, 1866, but was decided at the subsequent October term. As thus presented, the case was substantially this:

On the thirteenth of February, 1839, three sisters, Maria Candida, Maria Jacinta, and Maria de los Angeles Castro, presented a petition to Alvarado, then governor of the department of California, for a grant of a tract of land known as El Refugio, situated in the

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[2] [Affirmed in 11 Wall. (78 U. S.) 442.]

present county of Santa Cruz. On the same day the petition was referred to the administrator of the adjoining mission, and upon his favorable report, the governor, on the sixteenth of March, 1839, made "to the parties interested" a provisional concession of the land—a concession subject to his further action in the premises, and also gave them permission to occupy the land pending the proceedings. Under this permission the petitioners entered into the possession of the premises. At the same time the governor, to obtain the proper information to guide his further action, directed the prefect of the district to report upon the subject of the petition. The prefect reported that a grant could be made of the tract solicited, as it was vacant land and not claimed by any one. Accordingly, on the eighth of April, 1839, the governor made a formal concession of the tract to the three sisters by name, referring to their petition and the report of the prefect, and declaring them "owners in fee of the land known by the name of El Refugio," and directing that the proper grant or title papers (titulo) issue to them, and that the proceedings in the case (the expediente) be retained for the knowledge and approval of the departmental assembly. These proceedings are designated by the number 131. In this concession the name of one of the sisters, Maria de los Angeles, is now erased and over the erasure is written the name of Jose Bolcoff. On the twenty-second of May, 1840, this concession was approved by the departmental assembly. The approval, as entered on the journals of the assembly, has upon it the number of the expediente, 131, and mentions the date of the concession, and designates the three sisters by name as the parties to whom it was made. On the thirteenth of June following, the governor, referring to the action of the assembly, directed a certificate of the approval to be issued to the three sisters. At the time the concession was made, Jose Castro was prefect of the First district, and as such officer kept a record of the grants of land made in the district. The grants made by himself, as prefect, he entered at length, but of the grants made by the governor he entered only a memorandum, designating their date, the parties to whom issued, and the land granted. A book purporting to be the original registry kept by him is now in the archives in the custody of the surveyor-general of the United States. It bears on its face evidence of its genuineness, and is verified in every particular, which is susceptible of verification by documents in the archives. It contains a memorandum of nine grants of the governor; eight of these grants are found in the archives. Each of them has indorsed on it a memorandum directing its entry by the prefect in his registry, and a minute by the secretary of the prefect that it has been so entered with reference to the page of the registry. The minutes on these grants of the entries in the registry correspond. Of the

nine grants noted in the registry, the eighth is not found in the archives. This eighth is the one which the complainant contends was issued to the three sisters. The entry in the registry is that on the eighth day of April, 1839, the governor granted to them the place called Refugio. This entry was made on the day following. There is also in the archives an index of grants which was prepared between 1838 and 1845, by a clerk in the office of the secretary of state of the department, and under his direction, and is commonly known as Jimeno's Index. This index gives the number of the expedientes, the names of the grantees, and the designation of the land granted. Upon the index there is found against No. 131 the entry of a grant of land designated as "El Refugio," and the name of Jose Bolcoff written over an erasure. It is admitted that originally the names of the three sisters were written here. This was the documentary evidence which the complainant produced to show that a grant of the rancho El Refugio was issued to the three sisters, under whom he claimed by sundry mesne conveyances. The parol evidence produced by him related chiefly to the possession of the premises since the concession of the governor, and certain alleged admissions, verbal or by conduct, of the sisters.

The defendants claimed title to the premises through Jose Bolcoff; and of some portions of the premises they also alleged a conveyance or release from the sisters. As documentary evidence of title they produced: First, a paper purporting to be a grant of El Refugio to Jose Bolcoff, by Governor Alvarado, bearing date the seventh of April, 1841; second, a certificate of Governor Alvarado, dated July 28, 1841, stating that the grant made on the eighth of April, 1839, in favor of Jose Bolcoff, was approved on the twenty-second of May, 1841, by the departmental assembly, and purporting to quote the language of the proceedings of that body. The certificate concludes by stating that it was issued to the party interested for his security, in consequence of the decree of the thirteenth of June preceding, existing in the expediente; third, a document purporting to be a record of juridical possession, given to Bolcoff, July 26, 1842; fourth, a diseno or sketch of the tract El Refugio; and, fifth, a patent of the United States, bearing date on the fourth of February, 1860, issued to Francisco and Juan Bolcoff upon the confirmation of the alleged grant to Jose Bolcoff. In 1822, one of the sisters, Maria Candida, intermarried with Jose Bolcoff, and in 1839, Maria de los Angeles intermarried with Joseph L. Majors. The three sisters lived together as members of the family of Bolcoff upon the land granted—Los Angeles until her marriage, and Jacinta until 1850, when she became a member of a religious order in the Catholic Church, and has not since resided upon the premises. Since some time in 1850, Majors and wife had occupied a portion of

the tract, claiming their right to the possession under the grant to the sisters. In 1852, Francisco Bolcoff and Juan Bolcoff, sons of Jose Bolcoff, presented their petition to the board of land commissioners, created under the act of March 3, 1851 [9 Stat. 631], for a confirmation of the claim to El Refugio, asserted by them under the alleged grant to their father. In support of their claim they relied upon the grant of Alvarado, the certificate of approval by the departmental assembly, the record of juridical possession, and the sketch mentioned, with parol evidence of possession and cultivation. No question was raised before the board as to the genuineness of these documents, and in January, 1855, the claim was confirmed. An appeal from the decision was dismissed, and on the fourth of February, 1860, as already stated, a patent was issued thereon. In 1852, Majors presented for himself and on behalf of his wife a petition to the board for a confirmation of her claim to one-third of the tract, under the grant to her and her sisters. In support of the claim they produced the petition to the governor, the reports thereon, the provisional grant of March 16, 1839, the formal concession of April 8, 1839, and the order of the governor of June 13, 1840, to issue to them a certificate of the approval of the assembly. The board rejected the claim, holding, in substance, that no evidence was offered that any grant was issued to the three sisters; that the decree of concession was of itself insufficient; that until a document as evidence of his rights was issued and delivered to the grantee, a decree of concession and even favorable action of the departmental assembly did not pass any title, legal or equitable, and the property continued part of the public domain, subject to the disposition of the authorities of the government, and observed that this was the view of the governor and departmental assembly, as he had, notwithstanding the concession to the sisters, issued two years subsequently a grant of the same land to Bolcoff, and the assembly had approved it.

The whole decision proceeded upon the supposed genuineness of the documents offered as evidence of Bolcoff's title and the supposed authority of the officers of Mexico to regrant lands once granted, without previous surrender by the first grantee. It is true, the opinion of the board also spoke of a want of proof of compliance with the usual conditions of cultivation and inhabitation, but this view could only have been entertained upon the idea that the residence and cultivation of Bolcoff and his wife, and that of her sisters, were under different grants. The commissioners held, in confirming his claim, that cultivation and residence were sufficiently established. Since the action of the board upon these petitions, the registry of the prefect has been discovered, and the new light it throws upon the question of the issue of a grant to the sisters, and other circumstances, mentioned in the opinion of the court, led to a careful examination of the documents upon which the claim of Bolcoff rested and finally to the institution of the present suit.

John B. Harmon, for complainant.

R. F. Peckham, Wm. Matthews, T. A. Fabens, J. M. Seawell, and W. T. Wallace, for defendants.

Before FIELD, Circuit Justice, and HOFFMAN, District Judge.

FIELD, Circuit Justice. There is no doubt in our minds that a formal grant—a titulo—was issued to the sisters. The decree of concession entered on the eighth of April. 1839, directs the issue of such a document, and no reason is alleged why the direction should not then have been carried out. The entry in the prefect's registry must have been made from such a document. The decree itself remained, and always has remained, in the archives of the government. The issue of a certified copy, as inaccurately averred upon information and belief, would have been an unusual proceeding, and no ground is suggested for its adoption in this case rather than the proceeding directed, and the latter document could have been prepared with equal facility. Nor is there any other instance where the prefect made an entry from any document other than the titulo. The object of the entry by him was not the preservation of evidence of preliminary proceedings of the governor towards grants, but of grants actually made. As the prefect himself could also grant land under some circumstances, it was important for him, for the proper exercise of his authority, to know what part of the public domain had been disposed of by others.

The approval of the departmental assembly in May, 1840, more than a year afterward, and the order of the governor in June, 1840, directing a certificate of the approval to be issued to the sisters, show that at those periods there was no information possessed by the assembly or governor of any abandonment by the sisters of their interest in the concession. On the contrary, the action of the governor proceeded upon the ground that no other evidence of title, except what had already been delivered, was needed by them. If any other had been needed it would undoubtedly have been then ordered; and if no right remained in the sisters it is hardly to be supposed that the issue of the certificate to them would have been required.

There is also evidence, clear and convincing, that in 1839 or 1840, juridical possession of the land was given to the sisters, and that in this proceeding Jose Bolcoff appeared and represented them. The testimony of the assisting witnesses is direct upon this point, and also that no juridical possession was ever given in their presence or to their knowledge to any other person. It would be difficult to produce more satisfactory evidence of the ex-

istence of a formal grant to the sisters than is thus furnished, for the official delivery of possession was the final act in the Mexican land system for the investiture of a perfect title.

The grant, when issued, without doubt went into the possession of Bolcoff. As already stated, he was the husband of one of the sisters. and all of them resided with him; they were ignorant women, not capable of reading; he would therefore, almost as a matter of course, become the custodian of their title papers.

Were there any doubt upon the question of a grant to the sisters, and of its destruction by Bolcoff, we think it will be removed by a consideration of the documents produced in support of a title in himself. The decree of concession to the sisters is not denied, but it is insisted by the defendants—and this was the pretense set up by Bolcoff himself—that the interest of the sisters was exchanged for an interest in a tract of land of which he had obtained a grant, and that in consequence of this exchange the grant of El Refugio was issued, at their request, to him instead of being issued to them. The agreement is stated in this wise: That Majors and wife should relinquish to Bolcoff their interest in El Refugio, and allow him to obtain a grant therefor in his own name; and in exchange for this, that Bolcoff should relinquish to Majors his interest in a ranch known as St. Augustine, of which he had obtained a grant in 1833, and allow Majors to obtain a grant for the same, he paying Bolcoff, in addition, the sum of $400. It is alleged that this agreement was made after the intermarriage of Majors and Maria de los Angeles, and immediately carried into execution; that Majors and wife took possession of St. Augustine, and that afterward, on the seventh of April, 1841, Maria Candida went personally to the governor and stated the agreement, when the governor, at her request, issued the grant to Bolcoff alone, and that the erasures in the decree of concession and in the index were at that time made by Jimeno, the secretary of state.

Unfortunately for the defense, this statement is not only contradicted by Majors, but is inconsistent with almost every fact disclosed by the records. Majors did, indeed, obtain the ranch St. Augustine from Bolcoff, but it was by direct purchase, and not by an exchange of any interest in other lands. The transfer to him was made months before his marriage, and before even the petition of the sisters for El Refugio had been presented. The transfer to him is indorsed on the expediente of St. Augustine in the archives, and bears date on the fourteenth of January, 1839.

The alleged grant to Bolcoff makes no allusion to any pretended purchase or exchange with the sisters, or of any abandonment of their rights. It recites that he himself had petitioned for El Refugio, a recital which is inconsistent with his statement.

Of this document there is no trace to be found in the archives of the department, if we except the mutilated index of Jimeno. The absence of any such evidence of itself throws a strong suspicion upon the character of the document, for it was an essential part of the system of Mexico to preserve full record evidence of all grants of the public domain, and of the proceedings by which they were obtained. Pico v. U. S., 2 Wall. [69 U. S.] 282. It is incredible that in a matter of so much importance no minute was preserved of the grant, or of the relinquishment of the sisters. The loss of the Toma de Razon of that year does not account for the absence of all trace of either one or the other. No other instance is found in the archives of the department where a tract once granted had been relinquished or abandoned and a new grant made, without written evidence of the relinquishment or abandonment, and it is not believed that any such exists.

The certificate by the governor of the approval, by the departmental assembly, of a grant to Bolcoff is inconsistent with the alleged grant produced. It states that the grant made on the eighth of April, 1839, in favor of Jose Bolcoff, was approved on the twenty-second of May, 1841, yet it is not pretended by the defendants that any grant to Bolcoff was made on that day. The grant produced bears date the seventh of April, 1841. The certificate purports further to quote the language used by the departmental assembly in this approval. There was no session of the assembly in 1841; at least there is no evidence in the archives of the department that there was a session in that year, and if the year is erroneously given, and the approval of May 22, 1840, is intended, that relates only to the grant to the three sisters, who are therein designated by name, and no such language as that given is found on the journals of the assembly.

The document purporting to be a record of juridical possession given to Bolcoff, July 26, 1842, bears the signature of the prefect of the district and two attesting witnesses. One of the witnesses is unable to write, and the body of the entire document is in the handwriting of Bolcoff. The other witness testifies that he added his signature in 1851, when the document was presented to him by Bolcoff, with a request that he should sign it, inasmuch as he had not done so when the possession was given; that at this time the document had not the signature of the prefect or of the other witness, and Bolcoff stated that he was going to them for their signatures. Both of these witnesses testify emphatically that there never was but one juridical possession of the premises, and, as we have already stated, that this was delivered to the sisters. Yet. Bolcoff testified before the land commission that the document was signed by all the parties in the year 1842. The erasures in the decree of concession and in Jimeno's Index are not identical. The erasure in the decree is

only of the name of one of the sisters; but the erasure in the index is of the names of all of them.

From this examination of the documents it is difficult to resist the conclusion that they are all false, and were fabricated by Bolcoff, or some one at his instigation, to defraud the sisters of their property and secure the title to himself. Nor do we find any relief from the conclusion by the support given to his statements from the testimony of his wife, and of Alvarado and Castro. No such irreconcilable inconsistencies as are found between his statements and the documents, and between the different documents themselves, would exist if the statements were true and the documents were genuine.

By the false and fabricated documents and the suppression or destruction of the grant to the sisters, a confirmation of the claim under the alleged grant to Bolcoff has been obtained, and the legal title secured to his children; when in truth and fact the real title was in the three sisters and should have been adjudged to them. Under these circumstances, upon obvious principles of justice, the patentees and all persons holding under them with notice of the claim to the sisters, should be decreed to surrender up the title. The right of the complainant to a decree of this character rests upon the established doctrine, that whenever property is acquired by fraud, or under such circumstances as to render it inequitable for the holder of the legal title to retain it, a court of chancery will convert him into a trustee of the true owner. 1 Spence, Eq. Jur. 4; Hardy v. Harbin [Case No. 6,060].

This is not the case of a confirmation and patent upon an independent grant having no relations to the proceedings of the sisters, but upon a grant alleged to have been given by agreement to Bolcoff, as a substitute for the one decreed to the sisters. The case proceeds upon the ground that the confirmees obtained by fraud a confirmation in their names of the rights granted to the sisters, and by reason of the confirmation have secured the possession of the legal title to the premises. It is the possession of this legal title which prevents the complainant from maintaining ejectment for the premises, and drives him into a court of chancery for relief.

In addition to insisting upon the genuineness and authenticity of the alleged grant to Bolcoff, and other documents produced in support of his title, the defendants rely to defeat this suit upon several grounds, the principal of which are: First, that the claim of the complainant is a stale claim and barred by the statute of limitations; second, that the complainant has no standing in court, by reason of the non-presentation of the claim of two of the sisters to the board of land commissioners for confirmation, and the rejection, by the board, of the claim of the other sister; and, third, that the defendants

are bona fide purchasers of some portions of the property for a valuable consideration, without notice of the claim of the sisters, and for other portions have conveyances or releases from them.

1. In this state the statute of limitations, as we have had occasion to observe, differs essentially from the English statutes, and from statutes of limitation in most of the other states. Those statutes in terms apply only to particular legal remedies; and courts of equity there are said to be bound by them only in cases of concurrent jurisdiction, and in other cases to act only by analogy to the statutes, and not in obedience to them. But in this state the statute applies as well to equitable as to legal remedies. It is directed to the subject-matter, and not the form of the proceeding, or the forum in which it is prosecuted. Lord v. Morris, 18 Cal. 486; Hardy v. Harbin [supra].

There would seem, therefore, to be as good reason for requiring parties claiming the bar of the statute to suits in equity in this state, when the objection is not raised by demurrer, to plead such statute, or insist upon it in the answer, as there is for a similar rule where the bar of the statute is invoked in actions at law. In some cases such is the rule now, as in suits to have an account of rents and profits of land. See Prince v. Heylin, 1 Atk. 493. And were it necessary, we should not hesitate to hold that the rule in this state applies to all cases in equity; but it is not necessary now to go so far. For even where it was not essential by the old rules to plead the statute or to refer to it in terms, yet to claim any benefit of the statute, the pleader was required to state facts sufficient to bring the case within its operation, and then to insist that by reason of those facts the remedy of the complainant was barred. This has not been done by the defendants in this case; their claim, made in argument only, that the relief is barred will not answer. 2 Madd. 309; Van Hook v. Whitlock, 7 Paige, 381.

2. The presentation or non-presentation by the sisters of their claim under the grant to the board of land commissioners has nothing to do with the equitable relations between them and third parties. Such relations were never submitted to the board for adjudication. The object of the government in creating that tribunal was to separate the public lands from those which constituted private property, and to discharge its treaty obligations by protecting private claims. As we said in Hardy v. Harbin, the only question in which the government was concerned was, what interests in land had the former sovereignty parted with, not what had transpired between private parties subsequent to the action of that sovereignty; and so the supreme court of the United States "have frequently determined," to quote its own language, "that the government had no interest in the contests between persons claiming

ex post facto the grant." Castro v. Hendricks, 23 How. [64 U. S.] 442. And the supreme court of California, whilst holding that the legal title was vested in the confirmee, has in repeated instances declared that equities between him and third parties remained unaffected. See Hardy v. Harbin, where this subject is considered at length; also, Estrada v. Murphy, 19 Cal. 272; and the recent decision in Salmon v. Symonds, 30 Cal. 301.

If, in this case, after the sisters had obtained their grant, Bolcoff had fabricated a deed from them of the property, and presented the claim in his own name, and obtained a confirmation and patent, no question could be made against their right to demand a transfer to them of the legal title. He could not be heard to say that they would have lost the property by non-presentation, and that therefore he should be left alone in his fraudulent acquisition. His mouth would be stopped by his fraud. Nor, indeed, could it be in truth affirmed by any one that the property would have ultimately been lost to the sisters, and that relief might not have been afforded them by appropriate legislation. As observed in the Hardy Case, the finder of personal property might with equal propriety justify its detention on the ground that the true owner would never have found it.

Now the case supposed is, in all its essential features, the case at bar, the only difference being the presentation of a fabricated grant from the governor instead of a fabricated deed of the sisters, with a representation that the grant was issued to Bolcoff, by agreement with the sisters, as a substitute for the one decreed to them, and, in fact, issued to them. It would be a reproach to the administration of justice if a court of equity could afford no remedy to the injured parties.

3. But whilst equity will reach the perpetrator and parties acquiring the property under him without consideration or with notice of the rights of the real owners, it will extend its protection to purchasers in good faith for a valuable consideration without such notice; and there are several of the defendants who occupy this position. Some of the defendants have also conveyances or releases of the interest of two of the sisters. We have looked enough into the large folio volume of two hundred and twenty-seven pages, containing an abstract of the different conveyances by the sisters and parties claiming under them, and by officers of the law, and into the circumstances attending the execution of such conveyances, to satisfy us that only an undivided portion of the tract granted to the sisters can be decreed to the plaintiff under the views expressed in this opinion; and that the remaining portions will rest with the defendants—with some of them as bona fide purchasers, without notice; with others, as grantees of the interest of two of the sisters. An interlocutory decree in favor of the complainant will be entered and reference ordered to a master to report which of the defendants are bona fide purchasers, without notice of the claim of the sisters; and what parcels were so purchased, and also of what parcels the interest of the sisters, or any of them, has been conveyed to the defendants, with all necessary particulars; and upon the coming in and confirmation of his report, a final decree will be entered directing the defendants to transfer to the complainant their title to all parcels and undivided interests in parcels, not thus acquired and held.

In accordance with the foregoing decision an interlocutory decree in favor of the complainant was entered, and a reference ordered to a master, who, after hearing the proofs, made an elaborate report upon the matters referred. To this report various exceptions were taken by counsel. These exceptions were argued and all but one were overruled, and a final decree entered. The following opinion was delivered when the decision on the exceptions was made.

FIELD, Circuit Justice. The exceptions are numerous, and not always consistent with each other. We shall not undertake to pass upon them separately, but will consider the principal matters objected to in the report in the order in which they are treated by the master. The first matter of exception is the ruling upon the proof of service of the summons in the case of Moses A. Meader v. Jose Bolcoff and Maria Candida, his wife, and others.

It appears in evidence that on the nineteenth of March, 1853, Bolcoff and his wife and two sons executed a mortgage to Meader upon a portion of the premises, being a tract of about three miles square, to secure their joint and several promissory note of $8,073, drawing interest at the rate of three per cent. a month. The case referred to was a suit to foreclose this mortgage. The proof of service consisted in two certificates of the sheriff—one indorsed upon the summons, and one upon a certified copy of the complaint. The first certificate was as follows: "Personally served the within summons on Maria Candida Bolcoff, by delivery of a true —— of this writ, attached to a certified copy of complaint. The said defendant refused to take the writ. I laid it on a chair in the presence of said defendant and in the presence of one Frank Roan. Santa Cruz, June 13, 1855." The second certificate is dated June 19, 1855, and is to the effect that on the thirteenth of June the sheriff served the complaint on the defendant by personally delivering to her, in the town of Santa Cruz, a true —— of the complaint attached to a true copy of the summons.

Two objections are taken to these certificates: (1) That they do not show a service of

a copy of the summons; and (2) that a deposit of the paper designated on a chair in the presence of the defendant, upon her refusal to receive it, was not a sufficient delivery.

We do not think either of the objections well taken. The blanks in both certificates should have been filled with the word "copy," but no one could possibly be misled by the omission, or hesitate as to the word to be supplied. Were this otherwise, the omission in one certificate is cured by the statement in the other. The two certificates taken together show a compliance with the requirements of the statute. See Billings v. Roadhouse, 5 Cal. 71; and Moore v. Semple, 11 Cal. 360.

The second objection is no better than the first. If a defendant declines to receive from the proper officer a paper presented by him for service, he may deposit it at any convenient place in the presence of the party. The objection that the officer did not explain the character of the paper cannot be heard from the defendant. She should have received it, and examined it herself, or if unable to read, sought an explanation of its purport from those who could. Had she desired it, the officer would have given her the necessary information. The ruling of the master upon the sufficiency of the proof of service was correct.

But independent of the certificates, the service is sufficiently shown by the decree itself. That recites, among other things, that it appeared to the court that all of the defendants had been legally summoned. The fact was an essential preliminary to the entry of the decree, and of facts of that nature the recital is prima facie evidence. Comstock v. Crawford, 3 Wall. [70 U. S.] 396; Barber v. Winslow, 12 Wend. 102; Potter v. Merchants' Bank, 28 N. Y. 641.

In the foreclosure suit a decree was rendered July 3, 1855, directing that the mortgaged premises be sold; that the complainant recover against the mortgagors the amount of the promissory note, principal and interest, which was stated, besides the costs; that the proceeds of the sale be applied to the payment of that amount; that any surplus remaining be paid to the mortgagors, and that execution issue against them for any deficiency. Under this decree, the mortgaged premises were sold, and were bid in by Meader, to whom a deed was subsequently executed by the sheriff. The proceeds received did not pay the amount due on the mortgage. A deficiency of over $7000 remained. For this deficiency an execution was issued, and a sale was made thereunder of the separate property of Candida in the balance of the rancho El Refugio, which at that time consisted of two undivided thirds. At the sale, Meader became the purchaser, and in due time received the sheriff's deed. The master held the present judgment against Candida and the sale under it

void, and this ruling constitutes the second matter of exception to his report.

We think the ruling was clearly correct. Except in certain special cases, to which we will presently refer, a married woman is incapable of contracting a personal obligation. Her disability, arising from her coverture, prevails in all its force in this state as at common law. By no form of acknowledgment, or mode of execution, can this disability be overcome. Her signature will not impart validity to the contract; nor will her uniting in its execution with her husband render it any more than his personal obligation.

It is true that in some states equity will impose, as a charge upon her separate estate, the payment of a debt contracted for the benefit of such estate, or for her own benefit upon its credit, but this liability of her separate estate does not exist even there, according to the later and better considered cases, unless the engagement of the wife specifically relate to such estate, or indicate an intention specifically to charge it. Yale v. Dederer, 18 N. Y. 269, 22 N. Y. 451. In this state her separate estate cannot be charged except by instrument in writing executed both by herself and husband. Maclay v. Love, 25 Cal. 367.

The special cases referred to, where this disability does not exist with a married woman, are those where she acts as sole trader by the custom of London, or in this country by special legislation, or where she is obliged from necessity to act as a feme sole, as where her husband has absconded and abjured the country, or has been exiled, or has been imprisoned for life or years. In these last-mentioned cases, the husband is regarded as civilly dead, and the wife as being in a state of widowhood. Except in such cases as these common law rule prevails.

The case at bar is not one of the exceptional cases. It does not rest upon any valid obligation of Candida. The promissory note, for the security of which the mortgage was executed, was not binding upon her. It was only binding upon her husband and her sons. The execution of the mortgage created an incumbrance upon her interest in the property described therein, but it did not relate to or affect her interest in any other property.

The general doctrine, as we have stated it, is not controverted by counsel. Their position is, that the court which rendered the decree and ordered execution for the balance, had jurisdiction over the parties and the subject-matter of the suit—the enforcement of payment of the debt by directing a sale of the mortgaged premises and execution for any deficiency in the proceeds; and that its decree, however erroneous, cannot be questioned collaterally.

The general binding force of judgments and decrees of courts, where they have jurisdiction over the parties and the subject-matter, is admitted. Such judgments and

decrees are binding until reversed by regular proceedings; but the very question presented here is, had the court, which acted in this case, any jurisdiction to render a personal judgment upon the contract of a married woman, and to direct the enforcement of the judgment by execution against her property, except in the special cases mentioned.

To this question we think that there can be only one answer, and that this answer must be in the negative. All courts, even such as are designated courts of superior or general authority, are more or less limited in their jurisdiction; they are limited to a particular kind of cases, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise upon the high seas, or to the use of particular process in the enforcement of their judgments.

Now, by the general law a married woman cannot be personally bound by her contract; nor can she, by the general law, be subjected on her contract to a personal judgment. It matters not upon what consideration the contract is made; that inquiry cannot be had, nor the further inquiry, whether equity may not furnish some relief from the separate property of the party. However these inquiries might result, no personal judgment could follow; for such judgment upon the contract no court is competent to render. In this respect the jurisdiction of every court is limited. Various reasons are assigned for this limitation, some of which would not be applicable under our altered laws. Reeves, in his treatise on Baron and Femme, states "that no action at law can be maintained against her. For the judgment in that case would subject her person to imprisonment; and thus the husband's right to the person of his wife would be infringed, which the law will not permit in any case of a civil concern." "And for the same reason," he continues, "there can be no personal decree against her in chancery. It must be one that reaches her property only."

Whatever may have been the reason originally assigned for the limitations upon the authority of the courts, the existence of the limitations is unquestionable.

In Wallace v. Rippon, 2 Bay, 112, judgment had been taken against the wife jointly with the husband upon a bond, signed by both, and on the execution issued she was arrested. On a motion for her discharge her counsel contended that as she was under coverture at the time the bond was given, it was absolutely null and void, and that all proceedings upon it were equally so. On the other hand, it was argued that she was a feme sole dealer, and had the right, under a special agreement of her husband, pursuant to an act of the state, to make such contracts, and that having done so she was bound in her person and estate to fulfill them. But

the judges were all of opinion that the bond was "originally void as to her, and consequently all the proceedings upon it were void also. That a feme covert may be made a sole trader under the act of assembly, and even in some cases by the common law, but then that must always be set forth in the original contract, and specially shown in the legal proceedings, and alleged in the record, as it is a deviation from the general law of the land. In the present case there is no such allegation; consequently all the proceedings upon the face of them are absolutely void as against her, but are good and valid against the husband." She was accordingly discharged.

In Griffith v. Clarke, 18 Md. 457, a bill was filed to enjoin the enforcement out of the separate estate of the wife of a personal judgment entered by default against herself and husband upon a note signed by both. The lower court of Maryland having refused to dissolve an injunction issued, the case went to the court of appeals of the state. It was there urged that the judgment could not be impeached on the ground of coverture or any other ground which could have been used as a defense at law. But the court said that the note signed by the wife could not be enforced by any proceedings at law, and that the judgment entered against her by default was a nullity.

In Morse v. Toppan, 3 Gray, 411, it was held by the supreme court of Massachusetts that a judgment recovered against a married woman was void, though founded upon a contract made by her in carrying on business on her own account and while living separate from her husband. The action was brought upon the judgment which had been recovered against her by default upon a note given by her for articles necessary to carry on her business, which was that of a keeper of a boarding-house. The court said: "The fact that the defendant was a married woman when the judgment was rendered against her, would alone be a good bar to this action. It would be the same as if she had entered into an obligation by bond at the same time, to which she must have pleaded non est factum. A judgment is in the nature of a contract; it is a specialty and creates a debt, and to have that effect it must be taken against one capable of contracting a debt."

In Dorrance v. Scott, 3 Whart. 309, the supreme court of Pennsylvania held that a judgment which had been entered upon a bond and warrant of attorney executed by a married woman with her husband was void, and that a judgment obtained upon a scire facias issued thereon was also void as respects her and her estate. The case of Caldwell v. Walters. in the same court, is of similar import. 18 Pa. St. 79.

The cases cited by counsel from the Reports of the supreme court of Texas would appear to be opposed to this view. By that

court it has been held that a personal judgment against a married woman is valid until reversed on appeal, and that under the execution issued thereon her separate estate may be sold. This was held in Howard v. North. 5 Tex. 290, where the judgment had been rendered against husband and wife for fraudulent representations in the sale of land. "The acts of femes covert in pais," said the court, "may be, and frequently are, void; yet this does not impair the conclusive force of judgments to which they are parties; and if they be not reversed on error or appeal, their effects cannot be gainsaid, when they are enforced by ultimate process, or where they are brought to bear on their rights, in any future controversy." And the same doctrine has been applied there to personal judgments entered upon contracts of married women; such at least we infer to be the fact, from the refusal of that court to reverse, on appeal, such judgments, when rendered by default or consent. Laird v. Thomas, 22 Tex. 276; Bullock v. Hayter, 24 Tex. 9. These decisions are exceptional, and proceed upon the peculiar statute of Texas respecting the rights and powers of married women, and do not affect the general rule of law which prevails here.

The claim of the defendant Courtis covers about two-thirds of the entire rancho. He deraigns his title from Bolcoff and wife through their conveyance to Augustus Le Plongeon, dated November 21, 1857. The master held that the certificate made by the county clerk of the acknowledgment of the wife, Candida, of the execution of this conveyance was radically defective; and this holding constitutes another ground of exception to his report. The certificate was held defective in two particulars: (1) That it does not state that the contents of the deed were made known to her by the officer himself, but only through a sworn interpreter; and (2) that it does not state to whom the acknowledgment was made.

The certificate states in the first place the personal appearance of the grantors before the officer; his knowledge that they were the persons described in, and who executed the conveyance; and the acknowledgment of both to him of their free and voluntary execution of the instrument, for the uses and purposes therein mentioned. It then proceeds to give the separate acknowledgment of the wife, and states that on an examination separate and apart, and without the hearing of her husband, on being made acquainted with the contents of the conveyance "through Frank Alzine, an interpreter duly sworn," acknowledged that she executed the same, without fear or compulsion, or undue influence of her husband, and that she did not wish to retract the execution of the same.

The certificate is sufficient in all particulars. The officer taking the acknowledgment of a married woman to a conveyance is directed to see that she is made acquainted with the contents of the instrument. He is thus authorized and required to use the ordinary and customary mode of communicating the information to her. If she understands our language, that would be the appropriate vehicle of communication; if a foreigner, ignorant of our language, the employment of a sworn interpreter would be the natural means in analogy to the course pursued in taking testimony in the courts of justice; if deaf and she reads writing, the information might be given by the pen; or, if she understood them, by the signs employed by mutes. The officer will comply with the law when he avails himself of the common means used by men in the ordinary transactions of life, exacting from the agents employed the security of an oath. It is not necessary, however, for him to state in his certificate in what manner the information is imparted.

The second objection is without force. The certificate first states the fact of acknowledgment by both husband and wife to the officer, and then proceeds to give the character of the separate acknowledgment; which means of course the separate acknowledgment to himself, not to any other person.

The deed of Plongeon to Touchard, through which the defendant Courtis traces his title, in terms excepts from its operation several tracts of land—among others a tract conveyed to Ignacio Castro, by deed dated September 3, 1856. The counsel of Courtis objects to the exception as void for uncertainty, and cites the case of Jackson v. Hudson, 3 Johns. 387, where the court said: "An exception in a deed is always to be taken most favorably for the grantee, and if it be not set down and described with certainty, the grantee shall have the benefit of the defect." In that case two deeds were in evidence, containing exceptions: one of them was for one-half of certain patented premises, and the exception was of "one thousand acres before conveyed to David Schuyler." The other deed was for one-fourth of the patent, and the exception was of "five hundred acres before conveyed" to the same person. It did not appear in what part of the tract covered by the patent these two parcels had been located, and there was sufficient land to supply them without touching any part of the premises in controversy. As the deeds were not explicit in this respect, the court held that the grantee was at liberty to locate the excepted tracts on whatever part of the patent he pleased as against any other person but Schuyler; observing that where a deed may inure in different ways the grantee shall have his election which way to take it, and then lays down the general rule cited by counsel. There is nothing in this decision which supports the objection taken in this case. Here the deed to Ignacio, which is referred to, does locate the excepted tract and give with

precision its boundaries. There is no uncertainty in an exception in the sense of the rule, where reference is made to the deed of the property for a description of the excepted tract. Here the only uncertainty is as to the deed mentioned; but the name of its grantee and its date being given, enough is presented to lead to inquiry; and slight inquiry would have furnished all required information.

The defendants, the Santa Cruz Petroleum Oil Works Company, hold two undivided thirds of the tract of five hundred acres claimed by them, through sundry mesne conveyances from two of the sisters. They insist, moreover, that they are entitled to hold the entire interest as bona fide purchasers for value without notice. We think it very clear, from the evidence presented, that the parties purchased in the belief that they were acquiring a good title; and they were advised, and acted upon the opinion, that the patent to Bolcoff settled adversely to the claims of the sisters all question as to the title of the land, and that they paid a full price for the premises. That they acted honestly there is no doubt; but still it is clear that they acted with full knowledge of the pretensions made by the sisters. The question, therefore, is not as to the good faith of the parties—mere good faith cannot transfer title from one who does not possess it—but whether they constitute in the sense of the law such bona fide purchasers as will entitle them to hold the apparent title which they acquired against the true owner. The law does not intend to give one man's property to another, though the latter may have ignorantly paid to a stranger its true value. But there are certain evidences of ownership, upon which it is important, for the interests of society, that parties in the purchase of property should be able to rely with confidence. Whoever purchases for a valuable consideration, relying solely upon these evidences, without notice of other claims, is protected in his purchase. But the position of the purchaser is entirely changed when he has at the time notice of the claims of others to the property. He is then put upon inquiry as to the nature and extent of the claims, and must act at his peril. He cannot afterward invoke the protection of the courts against what he knew existed at the time, however thorough may have been his investigations as to the grounds of such claims, or complete his conviction of their worthlessness.

Now, in the present case, it is clear, as we have already stated, that the defendants, the Petroleum Oil Works Company, were informed of the pretensions made by the sisters; that they knew that these pretensions had been asserted in the courts; that they were not abandoned; that for one parcel at least a recovery had been had upon the title of the sisters; and that conveyances had been made by the sisters to the grantee of the complainant. The abstract of title furnished these defendants before completing their purchase, gave them the information. They, therefore, purchased with notice, and must take the consequences of their error of judgment.

The defendant Ryan asserts a claim to one undivided third of a league in the rancho, under Joseph S. Majors and Maria de los Angeles, his wife, one of the three sisters. The claim is founded upon two instruments: 1. A deed from Majors of his interest in the undivided third, for legal services to be rendered in the recovery of, or in defending the claim of Majors to one third of the rancho. 2. An instrument executed and acknowledged by Los Angeles purporting to ratify the contract and deed of her husband. Neither instrument bears any date, but the first was acknowledged on the seventeenth of October, 1855, and the second was acknowledged on the sixteenth of June, 1858, and also on the twenty-seventh of August of the same year. The two instruments are attached together, and it is contended that they are to be regarded as one instrument, and to have the effect of a joint conveyance.

There is nothing in the position; Majors never had any interest to convey. A ratification by his wife of his deed would have been ineffectual to pass her title. But a married woman cannot, by an instrument executed by herself alone, ratify an instrument which she never executed. She cannot ratify an act confessedly done in disregard of the requirements of the statute, by a second act in which all the formalities essential to the validity of the original act are omitted. A valid act cannot be accomplished by two illegal attempts at its execution.

This concludes our examination of all the matters objected to which are deemed of sufficient importance to require special notice. The alternative report of the master, made upon the hypothesis that his own view of the certificate of acknowledgment to the deed of Plongeon might be erroneous, and that such certificate might be held valid, will be adopted in lieu of the report made. All the exceptions of the defendants, which are not sustained by this opinion, are disallowed.

An order in conformity with the views here expressed will be entered; and the case will be referred to the master to prepare the draft of a final decree to be entered in the cause. In settling the form of the decree, the master will fix a day for the hearing of the parties.

This case was appealed to the supreme court under the title of Meader v. Norton, where the decree was affirmed. 11 Wall. [78 U. S.] 442.