## WOODS v. SLOAN. (No. 11989.)

Court of Civil Appeals of Texas. Fort Worth.
June 23, 1928.

Rehearing Denied Sept. 29, 1928.

Penix & Penix, of Graham, for appellant.
Taylor, Muse & Taylor, of Wichita Falls, for appellee.

DUNKLIN, J. Hyman J. Sloan, administrator of the estate of Isaac Sayles, deceased, instituted this suit against Henry Woods to recover title and possession to an undivided one twenty-fifth interest in two tracts of land, aggregating 1,642 acres, situated in Young county. From a judgment in favor of plaintiff, defendant has appealed.

The first count of plaintiff's petition was in the usual form of trespass to try title. In the second count of his petition, plaintiff based his claim of title upon a regular chain of conveyances from the state, in which chain of title was included a deed of conveyance made by Mrs. Betty Woods, as guardian of the estate of the defendant Henry Woods, who was then a minor, dated the 29th day of May, 1916; it being alleged that Betty Woods was the duly appointed and acting guardian of the estate of Henry Woods in the county court of Eastland county; that as such guardian she filed her application in that court for an order to sell the interest of said minor in the land above mentioned; that the county court of Eastland county granted said application; that thereafter said guardian filed her report in said court, reporting that she had sold the interest of the minor to John Woods for $450 cash paid; that on June 27, 1916, the county judge approved the report of sale, confirmed the same, and ordered the guardian to execute a deed of conveyance to the purchaser of the interest of the minor in the land; that in obedience to said order the guardian executed a deed of conveyance to said purchaser, who paid the cash consideration therefor of $450; that John Woods then sold the property to A. W. Kay, who in turn sold it to Isaac Sayles, of whose estate the plaintiff is the duly appointed administrator.

Plaintiff further specially pleaded title under the three, five, and ten year statutes of limitation. The claim of title under the five and ten year statutes of limitation was denied, and on this appeal no complaint is made of that ruling. But the trial court sustained the claim of title based upon the three-year statute of limitation, and whether or not that ruling was correct is the only question presented on this appeal. And whether or not that ruling of the trial court was correct hinges upon the further question of whether or not the orders of the county court granting the guardian's application for leave to sell the minor's interest in the land, and the further order confirming the sale and directing the guardian to execute a deed of conveyance to the purchaser were void or voidable only; appellant having agreed upon the trial that plaintiff's chain of title from the state down to Isaac Sayles was regular, with the exception of the deed from the guardian to John Woods, which appellant alleges was void.

If those orders were void, as insisted by appellant, then the guardian's deed made thereunder would not support the plea of limitation of three years, and the judgment rendered thereon should be reversed; but if they were voidable only, as insisted by appellee, then the judgment of the trial court should be affirmed.

The following articles of the Revised Statutes of 1925 were in force and effect at the time of the proceedings in the county court of Eastland county, referred to above:

"4195. When the income of the ward's estate, and the personal property thereof, and the proceeds of previous sales, are insufficient for the education and maintenance of the ward, or

to pay the debts against the estate, the guardian, or any person holding a valid claim against the estate, may, by written application to the court in which such guardianship is pending, ask for an order for a sufficient amount of real estate to be sold to make up the deficiency, or when the property of the ward consists in whole or in part of an undivided interest in real estate and the guardian believes it to be the best interest of the estate of the ward to sell such real estate, he may, by written application to the court in which such guardianship is pending, ask for an order for such real estate to be sold. * * *

"4196. The guardian shall apply for such order as is provided in the preceding article, whenever it appears that a necessity exists therefor, and set forth fully in his application with an exhibit, under oath, showing fully the condition of the estate."

"4198. Whenever an application for the sale of real estate is filed, the clerk shall immediately call the attention of the judge of the court in which such guardianship is pending to the filing of the application, and the judge shall designate a day to hear such application, which may be heard in term time or vacation, provided such application shall remain on file at least five days before any orders are made, and the judge may continue such hearing from time to time until he is satisfied concerning the application."

"4201. An order for the sale of real estate shall state:

"1. The property to be sold, giving such description of it as will identify it.

"2. Whether it is to be sold at public auction or at private sale, and if at public auction, the time and place of such sale.

"3. The necessity and purpose of such sale.

"4. It shall require the guardian to file a good and sufficient bond, subject to the approval of the court, in an amount equal to twice the amount for which such real estate is sold.

"5. It shall require the sale to be made and the report thereof to be returned to the court in accordance with law."

"4214. Reports of sale shall be in writing, and subscribed and sworn to by the guardian. They shall show:

"1. The time and place of the sale.

"2. The property sold, describing it.

"3. The name of the purchaser of the property.

"4. The amount for which each article or property was sold.

"5. The date of the order of sale.

"6. Whether such sale was at public auction or a private sale.

"7. The terms of the sale.

"8. Whether the purchaser has complied with the terms of the sale."

"4216. At any time after the expiration of five days from the filing of a report of sale, the court shall inquire into the manner in which such sale was made, and hear evidence in support of or against such report, and if satisfied that such sale was fairly made and in conformity with law, and that the guardian has filed bond as required herein, which has been duly approved by the court, the court shall cause to be entered a decree confirming such sale, and order the report of sale to be recorded by the clerk, and the proper conveyance of the property sold to be made by the guardian to the purchaser, upon compliance by such purchaser with the terms of sale."

"4219. If real estate be sold, the conveyance shall be by deed, and shall refer to the decree of the court confirming the sale and ordering the conveyance to be made, by giving the date and term of the court of such order. Such conveyance shall vest the right and title of the ward to such real estate in the purchaser, and shall be prima facie evidence that the law has been complied with in making such sale."

The record shows that Betty Woods was duly appointed guardian of the estate of Henry Woods, Wash Woods, and Maude Woods, and that she duly qualified as such guardian by giving the oath and bond as required by the statutes. On May 29, 1916, and while the guardianship was pending, Betty Woods filed in the county court of Eastland county an application alleging that each of the three minors, Henry Woods, Wash Woods, and Maude Woods, owned an undivided one twenty-fifth interest in the two tracts of land first above mentioned, and also the same interest in about 50 head of cattle, all of which interest the minors had inherited from their deceased uncle, Morris Woods. The application then continues as follows:

"Your applicant represents that the interest of the said minors in the above-described property is an undivided interest, and your applicant represents that she believes it to be the best interest of the said wards to sell said property, and that it will be of greater value to the said minors and to sell at private sale. Premises considered, your applicant prays that the court fix a time when the said applicant will be heard, and that upon final hearing of the said application your guardian of the estate of said minors be authorized to sell the said property, and that all further and necessary orders be made, authorizing the sale of the said land and premises, and also the interest of the said minors in the said cattle."

On June 5, 1916, the county judge of Eastland county set down the application for hearing on the same day, and on that date the application was granted by an order reading as follows:

"This day came on to be heard, in the guardianship of Henry Woods, Maude Woods, and Wash Woods, minors, the application of Betty Woods, guardian of the estate of said minors, for the sale of real estate belonging to the said minors, and it appearing to the court that due notice of said application has been given as required by law, that the same has been filed herein for at least five days, and it further appearing to the court that the income of the estate of said minors and the personal property thereof, and the proceeds of the previous sales, are insufficient for the education and maintenance of said wards, and it is the opinion of the court that the sale of the real estate of said wards is advisable and advantageous to said estate to sell the land mentioned in said application, to wit:

"An undivided one twenty-fifth interest, belonging to each of the said minors, in four tracts

of land situated in Young county, Texas, described as follows, to wit:

"First Tract. Abstract No. 91, M. Edmonds, grantee, containing 1,530 acres of land.

"Second Tract. [Land not under search.]

"Third Tract. Abstract No. 1944, D. M. Russell, grantee, containing 160 acres of land.

"Fourth Tract. [Land not under search.]

"And it further appearing to the court that said land ought to be sold for cash, at private sale, or partly on credit, that not less than one-third of the purchase price to be paid in cash, and the balance, to be evidenced by a note or notes for the different payments, matures in equal annual amounts, last note not to mature later than five years from date of deed, all notes to bear interest from date at the rate of not less than 6 per cent. interest, payable annually, and in default of payment of interest or principal or any part thereof when due shall mature the whole debt all notes for the deferred payments to be secured by vendor's lien retained in deed and notes upon the property sold, and further secured by deed of trust upon the property sold, with the provisions of the sale.

"It is therefore ordered, adjudged, and decreed by the court that the said guardian, Mrs. Betty Woods, as aforesaid, sell the above-described tracts of land at private sale for cash or for credit as above provided for, and that she execute and file herein a report of said sale when same is made in compliance with the law."

On June 5, 1916, the guardian filed the following report of sale:

"Now comes Betty Woods, guardian of the estate of Henry Woods, Wash Woods, and Maude Woods, minors, and respectfully report to the court that, in obedience to an order of this court made and entered on said guardianship on the 5th day of June, 1916, which said order of court is duly entered in the minutes of this court, she sold at private sale, on the 5th day of June, in the said county of Young, for the sum of four hundred and fifty dollars, one undivided twenty-fifth interest, which belonged to Henry Woods, in and to the following described tracts of land situated in Young county, Texas, to wit:

"First Tract. Abstract No. 91, M. Edmonds, grantee, containing 1,530 acres of land.

"Second Tract. Abstract No. 615, section No. 358, grantee T. E. & L. Co., containing 160 acres of land.

"Third Tract. Abstract No. 1720, section No. 2, J. T. Cunningham survey, grantee, containing 160 acres of land.

"The interest herein conveyed is all of the undivided interest of the said Henry Woods in and to the land hereinabove described, and being the undivided one twenty-fifth interest, which the said Henry Woods inherited from Morris Woods. Included within the consideration above mentioned is the undivided interest of the said Henry Woods in and to the cattle which belonged to Morris Woods, now deceased. The purchaser of the said property was John Woods, of Young county, Texas, and he is now ready to comply with the terms of said sale, and your applicant prays that she be authorized to make deed to the said property to the said John Woods, upon his compliance with the terms of the said sale.

"Mrs. Betty Woods.

"Sworn to and subscribed before me, June 5, 1916.

"[Seal.] R. L. Weeks, Notary Public,

"Filed June 5, 1916. Eastland County, Texas."

That report of sale was approved and the sale confirmed by the following order:

"On this 27th day of June, 1916, came on to be heard the guardianship of Henry Woods, Wash Woods, and Maude Woods, minors, the report of sale by Betty Woods, guardian of said estate, of the undivided one twenty-fifth interest of Henry Woods in the lands hereinafter described, made in obedience to an order of this court on the 5th day of June, 1916, and it appearing to the court that the said report of sale has been filed and docketed in the manner and for the time required by law, and it further appearing, upon examination and evidence herein, that the said sale was fairly made, and in conformity with the law, which has been duly approved by the court, and that the said land brought a fair price, and it further appearing that John Woods became the purchaser of said land, at private sale, for the sum of $450, and that the said land is described as follows, to wit:

"The undivided interest of Henry Woods, which was inherited by him from Morris Woods, deceased, being an undivided twenty-fifth interest in the following described tracts of land in Young county, Texas, to wit: First Tract. Abstract No. 91, M. Edmonds, grantee, containing 1,530 acres of land. Second Tract. [Land not under search.] Third Tract. Abstract No. 1944, D. M. Russell, grantee, containing 160 acres of land. Fourth Tract. [Land not under search.]

"The court therefore orders, adjudges, and decrees that the sale be and the same is hereby in all things approved and confirmed, and that the said report of sale be recorded by the clerk of this court. It is further ordered that the said Betty Woods, guardian of the estate of the said minors, make a proper conveyance of the undivided one twenty-fifth interest of the said Henry Woods in and to the said lands to the said John Woods, upon his compliance with the terms of the said sale. It is further ordered by the court that the undivided interest of Wash Woods and Maude Woods shall not be affected by this order of the court, and this order of the court is not intended to be a confirmation of the same of the undivided interest of the said Wash Woods and Maude Woods."

It will be observed that the order confirming the sale described one of the tracts as abstract No. 1944, D. M. Russell, grantee, containing 160 acres of land, and the guardian's deed made thereunder includes that tract, but the report of sale made by the guardian does not embrace that tract. However, appellant has made no point on that discrepancy, and we shall not notice it further, in view of our disposition of this appeal.

█ In Freeman on Judgment (4th Ed.) § 116, the following is said:

"If a judgment is void, it must be from one or more of the following causes: (1) Want of jurisdiction over the subject-matter; (2) want of jurisdiction over the parties to the action, or some of them; or, (3) want of power to grant the relief contained in the judgment."

The following language from the decision in Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914, is often referred to and followed:

"The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction. They are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testamentary disposition of estates; or to the use of particular process in the enforcement of their judgments. Norton v. Meader [4 Sawy. 603, Fed. Cas. No. 10351], Circuit Court for California. Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous; they would be absolutely void, because the court in rendering them would transcend the limits of its authority in those cases."

See, also, United States v. Walker, 109 U. S. 258, 3 S. Ct. 277, 27 L. Ed. 927, and other decisions cited in 9 Rose's Notes on U. S. Rep. 364.

A judgment is void for want of jurisdiction over the subject-matter or the parties to the suit because of a lack of authority in the court to render it. A judgment rendered in violation of the terms of a mandatory statute in which substantial property rights of the person against whom it is rendered are denied is likewise without lawful authority and is likewise void. In Sutherland on Statutory Construction, § 454, it is said:

"Mandatory statutes are imperative; they must be strictly pursued; otherwise, the proceeding which is taken ostensibly by virtue thereof will be void. Compliance therewith, substantially, is a condition precedent; that is, the validity of acts done under a mandatory statute depends on a compliance with its requirements. When a statute is passed authorizing a proceeding which was not allowed by the general law before, and directing the mode in which an act shall be done, the mode pointed out must be strictly pursued. It is the condition on which alone a party can entitle himself to the benefit of the statute, that its directions shall be strictly complied with. Otherwise the steps taken will be void. But when the proceeding is permitted by the general law, and an act of the Legislature directs a particular form and manner in which it shall be conducted, then it will depend on the terms of the act itself whether it shall be considered merely directory, subjecting the parties to some disability if it be not complied with, or whether it shall render the proceeding void. * * * Where a statutory power or jurisdiction is granted, which otherwise does not exist, whether to a court or an officer; and in all cases where, by the exercise of such a power, one may be divested of his property, the grant is strictly construed; the mode of proceeding prescribed must be strictly pursued; the provisions regulating the procedure are mandatory as to the essence of the thing required to be done."

Section 455 says:

"When the power to affect property is conferred by statute upon those who have no personal interest in it, such power can be exercised only in the manner and under the circumstances specified. The requirement can never be dispensed with as being directory where the act, or omission of it, can by possibility work injury, however slight, to any one affected by it. Provisions are directory where they relate to some immaterial matter not of the essence of the thing to be done; where a compliance is matter of convenience rather than substance; where the departure from the statute will cause no injury to any person affected by it."

And again in section 456:

"The special powers given to corporations, to courts or officers, must be exercised with strict, substantial adherence to all directions of the statute. * * * In statutory proceedings the statute must be substantially complied with; every act required which is jurisdictional, or of the essence of the proceedings, or prescribed for the benefit of the party to be affected thereby, must be done; the requirement is mandatory."

The following is quoted from 15 R. C. L. § 327, p. 853:

"While it is well settled that a judgment cannot be questioned collaterally for an error committed in the exercise of jurisdiction, the rule is equally well established that a judgment may be attacked in a collateral proceeding for error in assuming jurisdiction. Even where a court has jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void. Thus a judgment may be collaterally attacked where the court had jurisdiction of the parties and subject-matter of the action, but did not have jurisdiction of the question which the judgment

assumes to determine, or power to grant the particular relief which it assumes to afford to the litigants. For example, if a judgment is rendered against a corporation on the striking out of its answer in a case where the court was not authorized to take that action, such judgment is a nullity."

Again in section 328:

"One form of usurpation of power on the part of a court in rendering a judgment is where it attempts to disregard limitations prescribed by law restricting its jurisdiction. A failure to comply with statutory requirements regulating the exercise of the jurisdiction of a court may be sufficient to deny a judgment validity which will protect it from collateral attack. Thus, if a statute provides that a court in actions for divorce must, after the trial thereof, file its decision and conclusions of law, and if it determines that a divorce ought to be granted, must enter an interlocutory judgment and that one year after such interlocutory judgment is entered, the court may, on motion of either party, or upon its own motion, enter a final judgment granting the divorce, a judgment entered in the first instance granting an absolute and immediate divorce is not erroneous merely, but is beyond the jurisdiction of the court, and void."

The following is taken from Freeman on Judgments (4th Ed.) § 25:

"Presumptions in favor of proceedings of courts of record are indulged only in relation to those jurisdictional matters concerning which the judgment roll is silent. But no presumptions in support of the judgment are to be allowed in opposition to any statement contained in the record. If an act is stated in the roll to have been done in a specified manner, no presumption arises that, at some future time, the act was done in a better or more efficient manner."

The foregoing announcements by the text-writers are fully supported by numerous decisions cited in the footnotes, and no useful purpose will be accomplished by a review of those decisions and the facts involved in the particular cases.

In American Indemnity Co. v. Noble, 235 S. W. 867, opinion by Commission of Appeals, approved by the Supreme Court, it was held that a surety on a guardian's general bond, not given for the special purpose of protecting the estate on a sale of real estate, was not liable for the guardian's failure to account for the proceeds of a sale of real estate sold by him without giving special bond, as required by article 4201, copied above. And since there was no general law authorizing the probate court to sell real estate belonging to a minor, but the authority so to do is derived solely from the statutes copied above, and since those statutes were not merely procedural, but were enacted for the protection of substantial property rights of minors, it follows that those statutory requirements are mandatory and not merely directory. And since it clearly appears, from the order of court granting the guardian's application for

leave to sell the interest of the minor, Henry Woods, that it did not require the guardian to give a bond in a sum equal to twice the amount for which the land was sold, as provided in article 4201, and since the report of the sale made by the guardian did not show that such a bond was given, and since it was admitted on the trial of this cause by the appellee Hyman J. Sloan that no such bond was ever given, we conclude that the orders of the court directing the sale to be made and later confirming it, were subject to collateral attack. Those orders of court being essential links in the chain of appellee's title, and the sale thereunder being absolutely void, the court erred in sustaining appellee's plea of three-year limitation, and rendering a judgment in his favor by reason of that holding.

Nor do we believe that appellee can successfully invoke the provisions of article 4219, which provides that a deed of conveyance made in pursuance of a decree confirming such a sale shall be prima facie evidence that the law had been complied with in making such sale. Manifestly, the provisions of that article of the statutes were intended to apply to such matters as the necessity for a sale of the property, whether the property sold for a fair price, and such other incidental matters. That article could not be construed as the validation of a sale made in clear violation of the provisions of article 4201, requiring the execution of a bond in double the amount for which the real estate is sold, as a condition precedent to the power of the guardian to make the sale at all. Furthermore, the record in this case conclusively overcomes any possible prima facie evidence of title arising from the confirmation of the sale and the execution of the deed.

Our foregoing conclusions are in accord with the principles announced in an opinion by the Commission of Appeals, approved by the Supreme Court, in the case of Smith v. Paschal, 1 S.W.(2d) 1086, in which it was held that an order of the probate court directing the administrator, upon final settlement of the administration, to deliver the balance in his hands to the clerk of the court, was void, because beyond the jurisdiction of the court to make the order. See, also, Paul v. Willis, 69 Tex. 261, 7 S. W. 357; 34 C. J. 518—19, 531, 546; Withers v. Patterson, 27 Tex. 491, 86 Am. Dec. 643.

In many decisions throughout the country the broad announcement is made that a judgment cannot be impeached in a collateral proceeding, except upon the ground of lack of jurisdiction of the subject-matter of the suit or of the person of the defendant, and that, too, unless such lack of jurisdiction is affirmatively apparent from the record of the suit. Some courts have said that that rule springs from a consideration of public policy, and is adopted in the interest of the peace of society and permanent security of titles. See 1 Black

**490**

on Judgment, § 245, and decisions there noted. However, the rule is recognized by all authorities that, in a direct proceeding for that purpose, a judgment can be impeached on grounds other than the lack of jurisdiction of the court over the subject-matter of the suit or the person of the defendant. If public policy is the controlling factor in the first instance, then it is difficult to understand why it should not also be true in the second instance.

Furthermore, it is the policy of all the courts to avoid a multiplicity of suits, if that can be done without injury to the substantial rights of the litigants. On the question whether or not a lack of jurisdiction of the person of the defendant or of the subject-matter of the suit are the sole grounds for a collateral attack upon the judgment, the authorities are hopelessly in conflict. Some of the decisions were rendered in states where law and equity were administered in separate jurisdictions, and possibly that fact may have been controlling. In this state we have the blended system, and in a suit to try title to land both legal and equitable rights may be enforced. And we perceive no sound reason in principle why the attack by appellant in this suit on the orders of the probate court and the deed executed thereunder should not be sustained, since the court had no authority under the Constitution or statutes to make those orders which purport to deprive appellant of title to the land, and since appellee specially pleaded those orders of the county court as judgments binding upon appellant, and based his rights of recovery thereon as one of the links in his chain of title.

Accordingly, the judgment of the trial court is reversed, and the judgment is here rendered in favor of appellant for title and possession of the land in controversy.